UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STRATEGIC ALLIANCE GROUP, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> CONSOLIDATED TECHNOLOGIES, INC., et al., <br><br> Defendants. | Civil Action No. 03-3909 (JAP) <br><br><br> REPORT AND RECOMMENDATION |

**BONGIOVANNI, Magistrate Judge**

This matter comes before the Court upon the Motion of Defendants/Counter-Claimants/Third-Party Plaintiffs the City of Linden and the City of Linden Board of Education (collectively, the "City") for an Order enforcing settlement against Strategic Alliance Group, Environmental Alliance Group, William LaVan, Sr. and William LaVan, Jr. (collectively, the "LaVans"). The Court has fully reviewed and considered all of the papers submitted in support of and in opposition to the City's Motion,[1] and considers the City's Motion without oral argument pursuant to FED.R.CIV.P. 78. For the reasons set forth more fully below, the Court recommends that the City's Motion be denied.

**I.   Background**

The facts of this case are well known to all parties. As a result, only those relevant to the instant Motion are set forth herein. In 2003, Strategic Alliance Group filed a Complaint against the City of Linden (and others), asserting various causes of action based on the City of Linden's

---

[1] The Court notes that the LaVans moved to strike the City's reply brief and Certifications of counsel submitted in support of same. That Motion is also addressed herein.

alleged breach of its duties with respect to the redevelopment and closure of the Linden Landfill. In early 2004, the City of Linden filed an Answer with Counterclaim, Cross Claim and Third Party Complaint against Strategic Alliance Group, William Lavan, Sr., William Lavan, Jr., Mark Alsentzer, Environmental Alliance Group, Inc. and Sadat Associates, in which the City of Linden alleged that the aforementioned individuals were responsible for any damages incurred by the City of Linden with respect to the redevelopment and closure of the Linden Landfill. In May 2004, the City of Linden Board of Education moved to intervene in this matter and by Order dated June 14, 2004 was permitted to do so.

     This case progressed and on January 10, 2007 the District Court conducted a settlement conference, which was attended by the following individuals: (a) Paul A. Sandars, Esq. and Steven J. Eisenstein, Esq., attorneys for the City; (b) the Mayor of the City of Linden and several other City officials and representatives; (c) David Dore, Esq., attorney of record for Strategic Alliance Group, LLC, Mark Alsentzer, Environmental Alliance Group, William Lavan, Jr. and William Lavan, Sr.; and (d) Julie LaVan, Esq. During the settlement conference, the above-referenced individuals discussed a settlement under which Messrs. LaVan, Sr., LaVan, Jr. and Alsentzer would pay the City $1,100,000.00, payable over the course of five years in $200,000.00 installments for the first four years and $300,000.00 in the fifth and final year. Further, according to the settlement discussions, the LaVans would be responsible for paying $100,000.00 per year for the first four years and $150,000.00 in the fifth year. Mr. Alsentzer would likewise be held to these same terms. In addition, the LaVans and Mr. Alsentzer were to be personally liable for their share of the payments with Mr. Alsentzer being personally liable for $550,000.00 and the LaVans being personally liable for the remaining $550,000.00. Further,

Messrs. LaVan, Sr., LaVan, Jr. and Alsentzer agreed to secure their monetary payments with collateral in the form of real property on which the City would have the right to file mortgages in the event of default.  Finally, Messrs. LaVan, Sr., LaVan, Jr. and Alsentzer's obligations were to be independent of the others'.

While an agreement was not placed on the record during the January 10, 2007 settlement conference, it was reported to the Court that an agreement had been reached.  Consequently, based on the reported settlement of this matter, on February 6, 2007, the District Court entered an Order of Dismissal.  Pursuant to the Order of Dismissal, this action was "dismissed without costs and without prejudice to the right, upon motion and good cause shown within 90 days, to reopen this action if the settlement is not consummated[.]" (February 6, 2007 Order of Dismissal, ¶ 1). Further, the Order provided that "if any party shall move to set aside this Order of Dismissal as provided in the above paragraph or pursuant to the provisions of Fed.R.Civ.P. 60 (b), in deciding such motion the Court retains jurisdiction of the matter to the extent necessary to enforce the terms and conditions of any settlement entered into between the parties and **dismissing all pending motions as moot**." (*Id*. at ¶ 2 (Emphasis in original)).

It was not until November 2007 that the parties informed the Court that an issue had arisen with respect to the LaVans and Mr. Alsentzer's settlement with the City.  As a result, on November 30, 2007, the District Court held a telephone conference to discuss the status of that settlement.  The District Court then set an in-person conference for December 27, 2007, which was adjourned and later rescheduled for April 25, 2008.  This Court conducted the April 25, 2008 conference.  In an effort to facilitate the consummation of the settlement of this matter, the Court scheduled an additional in-person conference on May 29, 2008.  During that conference,

3

the Court specifically made note of the delay between when this matter was dismissed as settled and when the parties informed the Court that an issue with the settlement had arisen. The Court also cautioned the parties that given this delay a motion seeking to reopen this matter may very well be denied. At the May 29, 2008 conference, it became clear that while this matter could potentially be resolved with respect to all other parties, it was unlikely that a final settlement would be consummated between the City and the LaVans.

On July 8, 2008, the Court held a telephone conference in this matter. At the conference, the City reported that it had obtained approval to enter a final settlement agreement with all of the Plaintiffs and Third Party Defendants except for the LaVans. The City also stated that it would file a Motion to Enforce Settlement against the LaVans by the end of July. While no motion was filed in July, on December 8, 2008 the City moved to enforce its settlement agreement with the LaVans.

In its Motion to Enforce Settlement, the City argues that the LaVans and the City came to a binding settlement agreement during the January 10, 2007 conference. Specifically, the City claims that the LaVans, through their attorney Mr. Dorey, Esq., as well as Julie LaVan, Esq., who the City alleges was present at the conference a "as a party representative for the Messrs. LaVan Sr. and William LaVan Jr.[,]" agreed to settle this matter for the following material terms: (1) Messrs. LaVan, Sr., LaVan, Jr. and Alsentzer would pay the City $1,100,000.00, payable over the course of five years in $200,000.00 installments for the first four years and $300,000.00 in the fifth and final year; (2) the LaVans would be responsible for paying $100,000.00 per year for the first four years and $150,000.00 in the fifth year; (3) Mr. Alsentzer would be responsible for paying $100,000.00 per year for the first four years and $150,000.00 in the fifth year; (4) the

LaVans and Mr. Alsentzer agreed to secure their monetary payments with collateral in the form of real property on which the City would have the right to file mortgages in the event of default; (5) the LaVans and Mr. Alsentzer were to be personally liable for their share of the payments with Mr. Alsentzer being personally liable for $550,000.00 and the LaVans being personally liable for the remaining $550,000.00; and (6) Messrs. LaVan Sr., LaVan, Jr. and Alsentzer's obligations were to be independent of the others'.  The City argues that "[t]here is no doubt that there was a Settlement Agreement between the parties and the LaVans should be ordered to pay the $550,000.00 to Linden as agreed." (The City's Br. at 13).  Further, the City claims that the LaVans breached the settlement agreement by failing to promptly identify the promised collateral.  The City argues that this breach "warrants the immediate collection of the agreed upon amount" and that "judgment in the full amount of the settlement, $550,000.00, should enter in favor of Linden as against the LaVans, Jr. and Sr., severally, jointly and individually." (*Id.*)

The LaVans oppose the City's Motion arguing that no settlement was reached at the January 10, 2007 conference.  Instead, the LaVans argue that the parties merely engaged in settlement discussions.  The LaVans note that neither Mr. LaVan, Sr. nor Mr. LaVan, Jr. was present at the January 10, 2007 conference and argue that, as such, they "were unable to <u>accept</u> or decline" they City's "<u>offer</u> to settle the case for a total of $1.1 million backed by sufficient collateral." (LaVans' Opp. Br. at 7 (Emphasis in original)).  Further, the LaVans contend that neither Mr. Dorey nor Mrs. LaVan had authority to accept or decline the City's proposed offer on their behalf.

In this regard, the LaVans claim that a conflict of interest emerged between Messrs. LaVan, Sr., LaVan, Jr., and Alsentzer and that Mr. Dorey was aware of the "prevalent conflicts."

5

(*Id*. at 6). The LaVans argue that Mr. Dorey did not have authority to enter into a settlement on their behalf and, indeed, describe Mr. Dorey as having attended the January 10, 2007 conference as an "attorney for Mark Alsentzer, Strategic Alliance Group, Environmental Alliance Group, and Bruce Rosetto, Esq." (*Id*.) In addition, the LaVans claim that "Mrs. LaVan did not have the authority to accept or decline the offer proposed at the Conference." (*Id*. (Emphasis in original)). Moreover, the LaVans argue that "[i]t is absurd to suggest that her presence resulted in the meeting of the minds pursuant to a settlement arrangement and that she, in fact, accepted the City's offer." (*Id*. at 7-8). The LaVans note that "Mrs. LaVan had recently graduated from Law School and had taken the Bar only a few months earlier." (*Id*. at 8). They argue that "[s]he was not qualified to understand the nature of the terms proposed and was not present to give authority to settle." (*Id*.) Indeed, the LaVans state that "[g]iven Mr. Dorey's statement that 'nothing of relevance' would occur at the conference, she attended and was completely caught off guard by the discussions." (*Id*.) Moreover, the LaVans argue that on several occasions Mrs. LaVan stated that she "'could not speak for her husband and father-in-law.'" (*Id*. (Citation omitted)).

Furthermore, the LaVans contend that the fact that "[t]he conference was not read into the record" is evidence that "there was no meeting of the minds" and that no settlement occurred. (*Id*.) The LaVans also argue that it is clear that they did not enter into a settlement because the terms and conditions of the City's offer were impossible to meet and consequently no acceptance occurred. In this regard, the LaVans argue that a material term of the City's settlement offer was that there had to be sufficient collateral to back the proposed monetary payments. The LaVans argue that they were unable to meet the City's collateral terms and therefore no settlement was reached.

6

**II.     Analysis**

A settlement agreement is a type of contract. *See Mortellite v. Novartis Crop Prot., Inc.*, 460 F.3d 483, 492 (3d Cir. 2006) (citing *Borough of Haledon v. Borough of N. Haledon*, 358 N.J. Super. 289, 305 (App. Div. 2003)). Consequently, courts look to state contract law when determining whether an enforceable settlement agreement has been reached. *See Id.*

In New Jersey, there is a strong public policy favoring settlements. *Nolan v. Lee Ho.*, 120 N.J. 465, 472 (1990). Consequently, courts "strain to give effect to the terms of a settlement wherever possible." *Dep't of Pub. Advocate v. N.J. Bd. of Pub. Util.*, 206 N.J. Super. 523, 528 (App. Div. 1985). While courts will not enforce "[a] settlement . . . 'where there appears to have been an absence of mutuality of accord between the parties or their attorneys in some substantial particulars, or the stipulated agreement is incomplete in some of its material and essential terms[,]'" (*Bistricer v. Bistricer*, 231 N.J. Super. 143, 147 (Ch. Div. 1987) (quoting *Kupper v. Barger*, 33 N.J. Super. 491, 494 (App. Div. 1955))) "a contract is no less a contract because some preferable clauses may be omitted either deliberately or by neglect. So long as the basic essentials are sufficiently definite, any gaps left by the parties should not frustrate their intention to be bound." *Id*. (Internal quotation marks and citation omitted). Further, provisions that "pertain to the fair implementation of [a] settlement . . . are not the essentials of the settlement." *Id*. 231 N.J. Super. at 149.

Moreover, under New Jersey law, as long as "the parties orally agree on the essential terms," a contract is formed. *McDonnell v. Engine Distributors*, Civil Action No. 03-1999, 2007 WL 2814628, *3 (D.N.J. Sept. 24, 2007). This is true "'even though [the parties] contemplate the later execution of a formal document to memorialize their undertaking.'" *Id.* (quoting *United*

*States v. Lightman,* 988 F.Supp. 448, 459 (D.N.J. 1997).  As a result, "as long as those essential terms are agreed to, 'the settlement will be enforced notwithstanding the fact that a writing does not materialize because a party later reneges.'" *Id.* (quoting *Lahue v. Pio Costa*, 263 N.J. Super. 575, 596 (App. Div. 1993).

In this matter, before the Court can address the merits of the City's underlying Motion to Enforce Settlement, the Court must first determine whether it would be appropriate for the Court to decide same under the circumstances of this case.  The Supreme Court has held that enforcement of a settlement agreement, whether through an award of damages or a decree of specific performance "is more than just a continuation or renewal of the dismissed suit and hence requires its own basis for jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 378 (1994).  According to the second paragraph of the Order of Dismissal, the Court retained jurisdiction to enforce the terms and conditions of the settlement entered into between the parties under only the following two limited circumstances: (1) if a party moved to set aside the Court's Order of Dismissal in accordance with ¶1 of the Court's Order (i.e. "upon motion and good cause shown within 90 days" of the entry of the Order); or (2) if a party moved to set aside the Court's Order of Dismissal "pursuant to the provisions of Fed.R.Civ.P. 60 (b)[.]"

Here, neither the City nor the LaVans moved to reopen this matter within the 90 days provided by ¶1 of the Court's Order of Dismissal.  Similarly, neither the City nor the LaVans ever made a request that the 90 day period set forth in ¶1 of the Court's Order be extended.  Instead, over 9 months or 270 days elapsed before any party informed the Court that there was an issue with the settlement reached in this matter.  While the City may have believed that the matter was settled and that therefore there was no reason to move to reopen the case in

accordance with ¶1, the City fails to explain why, when it became apparent that the settlement would not be consummated within 90 days, it failed to request that the 90 day period be extended.  Similarly, the LaVans fail to explain why in light of their strong-held belief that no settlement was ever reached in this matter, they never sought to have the case reopened.  Indeed, not only did the LaVans fail to move to reopen this matter within the 90 days provided by ¶1 of the Court's Order of Dismissal, but to date, they have made no efforts to reopen the matter. In fact, neither party has moved to set aside the Court's Order of Dismissal in accordance with FED.R.CIV.P. 60(b) as outlined in ¶2 of the Order of Dismissal.  Instead, nearly two years after the Order of Dismissal was entered, the City filed the instant Motion to Enforce and the LaVans' opposed same.

    As is evident by the Court's Order of Dismissal, while the Court retained jurisdiction to enforce settlement, it specifically did so under the limited circumstances described above.  Neither of those circumstances is present here and neither the City nor the LaVans have set forth any other basis that would justify the Court's exercise of jurisdiction over the instant Motion.  As a result, the Court finds that it lacks the power to substantively decide the City's Motion to Enforce Settlement.  Consequently, the Court recommends that the City's Motion be denied.  Nevertheless, as is also clear from the Order of Dismissal, this matter was dismissed because it was "reported to the Court that the . . . action ha[d] been settled in its entirety[.]" Consequently, the City may file a separate action on the settlement itself.

    Finally, the Court notes that the LaVans have moved to strike the City's reply brief as well as the Certifications of counsel filed in support of the City's reply, arguing that the Certifications violate L.Civ.R. 7.2 and that the City set forth a false premise for seeking an

9

extension of time to file their reply. In the same motion, the LaVans request that sanctions be imposed against the City's counsel.

The Court finds that the City provided a legitimate reason for seeking an extension of time within which to file its reply. Consequently, the Court denies the LaVans' request to strike same. With respect to counsel's Certifications, the Court finds that in addition to statements of facts, certain portions of Steven J. Eisenstein and Paul A. Sandars, III's Certifications filed in reply to the City's Motion to Enforce Settlement contain factual arguments that are inappropriate under L.Civ.R. 7.2(a). (*See, e.g.,* ¶¶ 5, 9 and 11 (among others) of the Eisenstein and Sandars' Certifications). As a result, while the Court will not strike counsel's Certifications in their entirety, the Court has disregarded all argument contained therein. Further, under the circumstances presented here, the Court declines to exercise its discretion to impose sanctions on the City's counsel for their noncomplying Certifications.

### III.    Conclusion

For the reasons set forth above, the Court recommends that the City's Motion to Enforce Settlement be denied. In addition, the Court hereby denies the LaVans' Motion to Strike and for Sanctions.

IT IS therefore on this 9th day of June, 2009,

RECOMMENDED that the City's Motion to Enforce Settlement [Docket Entry No. 164] be denied; and it is further

ORDERED that pursuant to L.Civ. R. 72.1(c)(2) and Fed. R. Civ. P. 72(b), within ten (10) days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations. A party

may respond to another party's objections within ten (10) days after being served with a copy thereof; and it is further

    ORDERED that the LaVans' Motion to Strike [Docket Entry No. 178] is denied; and it is further

    ORDERED that the Clerk of the Court terminate the aforementioned Motion [Docket Entry No. 178] accordingly.

    Respectfully submitted,

       s/ Tonianne J. Bongiovanni
    **TONIANNE J. BONGIOVANNI**
    **UNITED STATES MAGISTRATE JUDGE**